# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

KETURAH KRANKOVICH,

    Plaintiff,

v.

DANIEL RAPAVI,
Harrison County Probation
Officer, *et al.*,

    Defendant.

Case No. 2:17-cv-140
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 4), Plaintiff's Motion for leave to Amend the Complaint and Response in Opposition to Defendants' Motion to Dismiss (ECF No. 8), Defendants' Reply in Support of its Motion to Dismiss and Opposition to Plaintiff's Motion for Leave to file an Amended Complaint. (ECF No. 11), Plaintiff's Surreply in Opposition to Defendants' Motion to Dismiss and in Support of her Motion to Amend (ECF No. 12), as well as Defendants' Motion to Strike In Part Plaintiff's Surreply. (ECF No. 14.) For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED**, Plaintiff's Motion to Amend is **DENIED** and Defendants' Motion to Strike is **DENIED**.

### I.    MOTION TO DISMISS

**A.    Factual Background**

Plaintiff Keturah Krankovich ("Plaintiff") filed this action, and has since proceeded without the assistance of counsel. (ECF No. 2.) On or about February 12, 2015, Plaintiff was arrested for giving her son a narcotic pain medication while he was in police custody inside the Harrison County Courthouse. (Compl. at 3, ECF No. 2.) Upon arrest, Plaintiff was taken into

custody and held overnight at the Harrison County Jail. (*Id.*) On February 13, 2015, a grand jury returned a felony indictment against Plaintiff for trafficking drugs in a state controlled facility. (*Id.*) Following her indictment, Plaintiff was held in jail for "four or five days" before being offered release on bond, conditioned upon her "compliance with the Harrison County pre-trial program." (*Id.* at 3–4.) Plaintiff contends that as part of the pre-trial program, she was required to report twice a week to the adult probation department and during such visits was "often" subject to "frequent random drug/urine tests done and performed by the local official at the adult probation department inside the Harrison County Courthouse." (*Id.* at 4.)

While participating in the pre-trial program, Plaintiff alleges that she was taken into custody and held in jail for "three or four days" in late May or early June 2015 for allegedly failing one of the required drug tests. (*Id.* at 7.) She further states in the Complaint that the "local probation department and prosecutor sought to revoke her bond . . . by motion . . . in December and then again in January 2016." (*Id.*) Plaintiff claims that the Harrison County Court of Common Pleas relied on testimony of the Harrison County Prosecutor and "the officers" that she failed her mandated drug test, in deciding to revoke her bond. (*Id.* at 8.) She contends that although requested, neither she nor her counsel received information regarding the drug tests where she tested positive. (*Id.* at 7.) About a year after the initial charges were brought, Plaintiff pled "no contest" to a misdemeanor charge. (Compl. at 6.)

Plaintiff now brings suit under 42 U.S.C. § 1983 against Defendants, Daniel Rapavi, Harrison County Chief Probation Officer ("Rapavi"), the Harrison County Adult Probation Department ("HCAPD"), head officer of HCAPD John Jackson ("Jackson") (collectively, "Defendants") for alleged violations of Plaintiff's rights guaranteed by the Fourth, Fifth, Sixth,

2

and Fourteenth Amendments to the United States Constitution. Defendant moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1),(4),(5), and (6).

### B. STANDARD OF REVIEW

Defendants bring the Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1),(4),(5), and (6). The Court finds Federal Rules of Civil Procedure 12(b)(1) and (6) most relevant to this action.

#### 1. Rule 12(b)(1) of the Federal Rules of Civil Procedure

Dismissal pursuant to Rule 12(b)(1) may be warranted if a party brings a claim in federal court that does not satisfy statutory or constitutional jurisdiction requirements. In considering a motion to dismiss pursuant to Rule 12(b)(1),the Court must construe all allegations in the Complaint in favor of plaintiff, "which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). However, plaintiff shoulders the burden of proving jurisdiction in order to survive the motion, *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

#### 2. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Rule 12(b)(6) is an avenue by which defendants can challenge, as a matter of law, whether a plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In considering a Rule 12(b)(6) motion to dismiss, the Court must construe the Complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

The Court must nonetheless read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the pleader is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 908 (S.D. Ohio 2013). Therefore, the factual allegations set forth in the Complaint, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show

entitlement to relief. *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Further, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Thus, while Plaintiff is not required to set forth detailed factual allegations at the pleading stage, the Complaint must contain some basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Id.* at 679; Fed. R. Civ. P. 8(a).

Moreover, the Court must "liberally construe *pro se* complaints and hold such complaints to a less stringent standard than pleadings prepared by attorneys." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). At the same time, however, such "lenient treatment has limits" and the Court "should not have to guess at the nature of the claim asserted . . ." *Id.* at 977 (internal quotations omitted).

### C. DISCUSSION

**1. Section 1983 Claims**

Plaintiff brings her claims against Defendants under 42 U.S.C. § 1983, alleging Defendants violated various constitutional rights. Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A prima facie case under Section 1983 requires (1) conduct by an individual acting under color of state law, and (2) this conduct must deprive the plaintiff of rights secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir.1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

4

### a. Defendant Harrison County Adult Probation Department[1]

Harrison County Adult Probation Department is a government entity under the authority of the local court of common pleas. *See* O.R.C. § 2301.27(A)(1)(a) "[t]he court of common pleas may establish a county department of probation."); O.R.C. § 1901.33(A) ("[t]he judge or judges of a municipal court may appoint . . . one or more probation officers . . . [p]robation officers have all the powers of regular police officers and shall perform any duties that are designated by the judge or judges of the court."). A government entity is not considered a "person" and thus "may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability." *Harris v. Jan*, Case No. 3:05CV7370, 2005 WL 3483551, at *2 (N.D. Ohio Dec. 15, 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Section 1983, however, does impose liability on a government entity when, as the Supreme Court of the United States explained in *Monell*, the entity's official policy, practice or custom, causes an employee to violate another's constitutional rights. *Monell*, 436 U.S. at 691.

A government entity, therefore, may be liable under 42 U.S.C. § 1983 if a plaintiff demonstrates that the execution of the entity's custom or policy caused the alleged deprivation of the plaintiff's rights. To succeed, the plaintiff must demonstrate a direct causal link between the custom or policy and the constitutional deprivation by showing that the particular injury alleged

---

[1] Defendant HCAPD also asserts that it is entitled to Eleventh Amendment immunity from suit as an arm of the common pleas and municipal courts and therefore as an arm of the state of Ohio. The Sixth Circuit in *Cash v. Hamilton County Dep't of Adult Prob.*, 388 F.3d 539 (6th Cir. 2004), however, remanded the district court's decision to dismiss a case against a parole department for Eleventh Amendment immunity. There, the Court held "the bald assertion that the Department is an arm of the common pleas and municipal courts is insufficient by itself to garner Eleventh Amendment immunity." *Id.* at 545 (citing *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003) (rejecting a *per se* rule granting Eleventh Amendment immunity to county courts)). Instead, the Sixth Circuit explained that the district court is required to review a number of factors to determine if immunity applies, including the "most important fact . . . 'will a State pay if the defendant loses?'" *Id.* (citing *Brotherton v. Cleveland*, 173 F.3d 552, 560 (6th Cir. 1999)). Defendant does not argue that the State of Ohio would be responsible for damages in this case. Thus it would be improper to dismiss the instant action under Eleventh Amendment immunity at this time.

was caused by the execution of the particular custom or policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993), cert. denied, 510 U.S. 1177 (1994). A "custom" may be the basis for government liability "if it is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 69–91. Likewise, a "policy has been defined as formal rules or understanding – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Wingrover v. Forshey*, 230 F. Supp. 2d 808, 828 (S.D. Ohio 2002) (internal citations removed) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)).

Construing the Complaint in the light most favorable to Plaintiff, her policy based claims against HCAPD as contained in her Complaint, are based upon the pre-trial release program she participated in. Plaintiff alleges that HCAPD deprived her of her constitutional rights by failing to "properly maintain, control, develop, create and administer its ongoing onsite urine analysis pretrial testing procedures" and that the "process" was "completely lacking in any formalized administrative rules, codes, procedures, written and published practical safeguards and protocols . . ." (Compl. at 16–17.)

Plaintiff asserts that the policy or custom of HCAPD requiring her to submit to drug testing twice weekly violates her rights under the Fifth and Fourth Amendments of the United States Constitution. She moreover asserts that not receiving the discovery she requested for the revocation hearing violated her right to due process and her constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. The Court therefore, reviews these actions as though they were taken based on HCAPD policy or custom. As explained below, neither allegation amounts to a constitutional violation.[2]

---

[2] Plaintiff also complains that she never received a requested pre-trial release program handbook. Aside from conclusory statements alleging that she never received the requested information, however, she fails to link that lack of information to a constitutional claim.

i. **Pre-Trial Release Program**

After the grand jury returned an indictment against Plaintiff for trafficking drugs in a state controlled facility, she was given the option of either remaining incarcerated or being released on bond under the condition that she participate in the pre-trial release program. As part of the pre-trial release program, she had to report to her parole officer twice weekly and per her allegations, often submitted urine samples for drug testing. To the extent that Plaintiff challenges the constitutionality of having to comply with the conditions of her pre-trial release program, the Court finds that she did not plausibly plead a constitutional violation.

Under Ohio Rule of Criminal Procedure 46, a court may impose "[a]ny constitutional condition considered reasonably necessary to ensure appearance or public safety" on pre-trial defendants released from jail on bond. Ohio Crim. R. 46. The Harrison County Court of Common Pleas' order granting her pre-trial release, imposed conditions for pre-trial release including requiring her to report in person twice a week and submit to drug testing. The relevant question, therefore, is whether requiring her to submit to drug testing twice a week is a "constitutional condition" set as part of her release.

*A. Fourth Amendment*

Plaintiff asserts that HCAPD's policy of requiring her to report twice a week for drug testing violates her Fourth Amendment rights, reasoning that the tests were "completely arbitrary." (Compl. at 7.)

The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, protects "the people . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonable searches ordinarily must be based on probable cause. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 624 (1966) (citation omitted). The Supreme Court, however, has explained that "neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." *Nat'l Treasury Employee Union v. Von Raab*, 489 U.S. 656, 665 (1989). "A search unsupported by probable cause can be constitutional . . . when

7

special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Norris v. Premier Integrity Sols., Inc.*, 641 F.3d 695, 698 (6th Cir. 2011) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). The state compelled collection and testing of urine constitutes a search under the Fourth Amendment. *Id.* (citing *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995) (citing *Skinner*, 489 U.S. at 617)). Accordingly, at this stage of the litigation, the question the Court must examine is whether Plaintiff has plausibly plead that the government lacked special needs to require her to submit to drug testing.

The Sixth Circuit touched on the constitutionality of drug testing individuals as a condition of pre-trial release in *Norris*, where the Court held that direct observation drug testing does not violate a pretrial release program participant's Fourth Amendment right to privacy.[3] In *Norris*, the plaintiff challenged the manner in which he was drug tested as part of his pre-trial release. The Court, nonetheless, implicitly acknowledged the validity of requiring program participants to submit to drug testing. First, the Court explained,

> [a] major aim of the Program is to insure that its participants will appear at trial. To achieve that objective, the Program subjects them to various conditions and limitations, including the prohibition on using narcotic drugs and consuming alcoholic beverages. Just as railroad employees had a reduced expectation of privacy because they worked in a highly regulated field and were validly subjected to drug testing through urinalysis in certain circumstances . . . so [plaintiff's] participation in the highly government controlled and regulated Pretrial Release Program reduced his expectation of privacy.

*Id.* at 699. Second, the Court recognized that the government had a "compelling interest" in insuring the accuracy of the drug tests. *Id.* at 697. Finally, the Court reiterated that the plaintiff "had a significantly reduced expectation of privacy because he was on pre-trial release awaiting criminal prosecution and, as a condition of such release, had agreed he would undergo drug testing." *Id.* at 700–01.

---

[3] Direct observation testing "requires that a male lower his pants so that its employee may 'directly observe the urine coming straight out of the body,' and must 'allow collector visibility of the participants [sic] genitalia.'" *Norris*, 641 F.3d at 696.

8

In the instant matter, Plaintiff challenges the drug testing itself as "arbitrary" and therefore claims that it violated her rights under the Fourth Amendment. As in *Norris*, Plaintiff agreed to comply with the conditions of her pre-trial release, which included drug testing. (Compl. at 4.) Moreover, prior to opting for pre-trial release instead of incarceration, Plaintiff acknowledges that she discussed her options with her attorney. (*Id.* at 4 ("The release of the plaintiff was also discussed by and with an attorney who allowed her to be released based upon her 'compliance with the Harrison County pre-trial program' and in this manner, the plaintiff was placed into a significant rotation of strict pretrial release monitoring and restrictions and was released upon her own recognizance.").) Plaintiff also admits that her participation in the pre-trial release program came after a felony indictment for "serious multiple drug trafficking charges," and continued until she pled no contest to a misdemeanor. (Compl. at 6.)

The Court therefore finds that as the defendant in *Norris* had a "valid interest in ensuring that [the drug tests' produce valid and reliable results," HCAPD's "interest in conducting the tests is sufficient to allow testing in the first place." *Norris*, 641 F.3d at 699. Accordingly, when construing the Complaint in the light most favorable to Plaintiff and accepting all of her well pleaded allegations as true, she has failed to allege any case or controversy with HCAPD. Thus, Plaintiff's claims against HCAPD as they relate to the twice a week reporting and drug testing are **DISMISSED**.

B.   *Fifth Amendment*

Plaintiff also claims the requirement that she submit to drug testing violated her rights under the Fifth Amendment. The Self-Incrimination Clause of the Fifth Amendment provides that no "person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has "long held that the privilege does not protect a suspect from being compelled by the State to produce 'real or physical evidence.'" *Pennsylvania v. Muniz*, 496 U.S. 582, 588–89 (1990) (citing *Schmerber v. California*, 384 U.S. 757, 764 (1966)). But rather, the Supreme Court has held that the privilege extends to "protect[] an accused only from being compelled to testify against himself, or otherwise provide the State with

9

evidence of a testimonial or communicative nature." *Id.*

Plaintiff merely states conclusively that her "right against self-incrimination" was violated. Accordingly, because the collection of a urine sample did not violate her rights under the Fifth Amend, the Court **GRANTS** HCAPD's Motion to Dismiss as it relates to Plaintiff's Fifth Amendment claim.

### ii. Revocation of Pre-Trial Release

To the extent Plaintiff challenges the revocation of her pre-trial release based on state court proceedings, including her allegations that her release was revoked based on hearsay testimony and that she did not receive requested discovery, this Court does not have jurisdiction to consider those allegations pursuant to *Heck v. Humphrey* and the *Rookery-Feldman* doctrine.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court addressed whether actions brought pursuant to 42 U.S.C. § 1983 were "appropriate vehicles" for challenging or collaterally attacking an outstanding state court criminal judgment or sentence. *Id.* at 486. The Court held they were not. Rather, the Court found that in order to recover damages for an allegedly unconstitutional state court conviction or "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, or declared invalid by a state tribunal. *Id.* at 487. Unless and until a plaintiff can prove that the challenged conviction or sentence has been so reversed, expunged, or declared invalid, "a cause of action under § 1983 for damages is not cognizable." *Ruff v. Runyon*, 258 F.3d 498, 501 (6th Cir. 2001).

The *Rooker-Feldman* doctrine also limits a federal district court's jurisdiction to review state law convictions. The doctrine is derived from two United States Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In both cases, the Supreme Court dismissed the suits for lack of

subject-matter jurisdiction, reasoning that, pursuant to 28 U.S.C. § 1257, only the United States Supreme Court, and not the lower federal courts, enjoys appellate jurisdiction over state court decisions. *See Rooker*, 263 U.S. at 414–15; *Feldman*, 460 U.S. at 478–79. Thus, as the Sixth Circuit Court of Appeals succinctly stated, "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings." *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (quoting *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002)).

The doctrine also bars federal district courts from hearing claims that are "inextricably intertwined" with state court judgments. *Hood*, 341 F.3d at 597. "In practice this means that when granting relief on the federal claim would imply that the state-court judgment on the other issues was incorrect, federal courts do not have jurisdiction." *Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 460 (6th Cir. 2003). In essence, the *Rooker-Feldman* doctrine divests federal courts of jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005).

Plaintiff argues that Defendants violated her right to Due Process and her constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments by revoking her pre-trial release. Plaintiff's claims are seemingly two-fold. First, she alleges that HCAPD violated her constitutional rights when her pre-trial release was revoked based on testimony at the hearing that she tested positive for drug use. (Compl. at 8.) Second, she contends that her constitutional rights were violated, including her Sixth Amendment right to confrontation, because she never received copies of the failed drug tests. (Compl. at 7.) Based on her allegations that the requests were made "in open court" and that her counsel formally requested the documents, the Court

concludes that these claims are based on state proceedings in her Harrison County criminal charges. The Court has no jurisdiction to review state court proceedings. *Hood*, 341 F.3d at 597. Plaintiff pled "no contest" to a misdemeanor charge from that criminal case. Accordingly, "a cause of action under § 1983 for damages is not cognizable." *Ruff*, 258 F.3d at 501.

Therefore, pursuant to *Heck v. Humphrey* and the *Rooker-Feldman* doctrine, the Court finds it does not have jurisdiction to consider Plaintiff's allegations regarding revocation of her pre-trial release from her Harrison County criminal case. As the Court does not have jurisdiction to consider Plaintiff's challenges to her state court proceedings, the Court finds Defendant HCAPD's Motion to Dismiss pursuant to Rule 12(b)(1) well-taken.

### b. Defendants Rapavi and Jackson

Plaintiff also brings claims against Defendants Rapavi and Jackson. It is not immediately apparent whether Plaintiff has named Defendants Rapavi and Jackson in their individual capacity or official capacity or both. Accordingly, the Court will examine Plaintiff's claims as if brought in both capacities. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers.).

### i. Defendants Rapavi and Jackson in their Official Capacities

To the extent that Plaintiff has brought suit against the defendants in their official capacities, Defendants are not considered "persons" under section 1983, but should be treated as against the Harrison County Adult Parole Department. *Sherick v. Champaign Cty.*, Case No. 3:12-cv-219, 2012 U.S. Dist. LEXIS 183000, at *5–6 (S.D. Ohio Dec. 31, 2012) ("an official capacity claim is 'another way of pleading an action against an entity of which an officer is an agent.") (citing *Bd. Of Cnty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)). As discussed above, Plaintiff failed to plead a legally cognizable cause of action. Thus, claims brought against Defendants in their official capacities are **DISMISSED**.

### ii. Defendants Rapavi and Jackson in their Individual Capacities

Plaintiff states that Defendant Rapavi was "[t]he official who administered and most responsible for the Plaintiff's frequent reporting and related testing procedures." She also claims that Defendant Rapavi aimed to "revoke her bond and to in fact, both restrict her freedom in the most severe manner, and place her in jail, upon her alleged 'failure' or 'failures' of such urine testing procedures at various points and times during the entire pendency of her ongoing imbalanced if not infirm local criminal prosecution . . ." (Compl. at 7.) Once again, viewing the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff's claims against Defendant Rapavi as the same brought against HCAPD. Accordingly, for the same reasons as discussed above, Plaintiff failed to plausibly plead a Fourth or Fifth Amendment violation. Furthermore, the Court likewise lacks the jurisdiction to review Plaintiff's claims against Defendant Rapavi as they relate to the revocation of her bond under *Heck* and the *Rooker-Feldman* Doctrine. *Hood*, 341 F.3d at 597. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as against Defendant Rapavi.

Plaintiff included Defendant Jackson in the caption of her Complaint, but does not claim that he participated in any alleged unconstitutional acts in the Complaint. Thus, as Plaintiff does not plead any claims against Defendant Jackson within her Complaint, the Court **DISMISSES** all claims against Defendant Jackson.

### 2. Intentional Infliction of Emotional Distress

Plaintiff also brings a claim for intentional infliction of emotional distress against Defendants HCAPD and Rapavi. In Ohio, a claim for intentional infliction of emotional distress requires a showing of the following: "(1) that the defendant intended to cause the plaintiff's serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Gore v. AT&T*, Case No. 2:09-cv-854, 2010 U.S. Dist. LEXIS 79398, at *7 (S.D. Ohio June 17, 2010) (citing *Phung v. Waste Management, Inc.* 71 Ohio St.3d 408, 410 (1998)).

Plaintiff alleges that Defendants caused her emotional and mental distress by requiring

13

her to submit to twice a week testing and by communicating to her that if she failed the drug tests her release would be revoked. (Compl. at 18.) Requiring Plaintiff to submit to drug testing as part of her pre-trial release program does not constitute "extreme and outrageous" conduct. *Norris*, 641 F.3d at 703 (denying plaintiff's claim for intentional infliction of emotional distress, finding defendant's direct observation method of obtaining urine samples as part of plaintiff's pre-trial release "did not' go beyond all possible bounds of decency' and would not be regarded as 'atrocious' or as 'intolerable in a civilized community.'"). Thus, the Court **GRANTS** Defendants' Motion to Dismiss as it relates to Plaintiff's claim for intentional infliction of emotional distress.

## II. MOTION TO AMEND AND MOTION TO STRIKE

In her Response in Opposition to Defendant's Motion to Dismiss, Plaintiff also moves to Amend her Complaint. Plaintiff requests leave to file an Amended Complaint naming the two prosecutors involved in the criminal action against Plaintiff. (Pl.'s Resp. in Opp. at 32.) Defendants assert that Plaintiff's attempt to amend the Complaint is futile because Plaintiff's proposed Amended Complaint seeks to add two addition defendants who are immune from suit.

A state prosecuting attorney acting within the scope of his or her duties "in initiating and pursuing a criminal prosecution" is immune from suit under § 1983. *Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009) (citing *Imbler v. Pachtman*, 424, U.S. 409, 419 n.13 (1976)). Plaintiff asserts that the prosecutors violated her constitutional rights by bringing the criminal charges against her. Initiating and pursuing a criminal prosecution, however, is considered within the scope of a prosecutor's duties. Thus, the Court concludes that the defendants Plaintiff seeks to add are immune from suit. Accordingly, Plaintiff's Motion to Amend is futile, and therefore, it is **DENIED**.

Defendants moved the Court to strike portions of Plaintiff's Surreply because Plaintiff did not seek leave to file the Motion. (ECF No. 14.) Plaintiff brings this action *pro se*. The pleadings of a *pro se* litigant are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines*, 404 U.S.at 520; *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992).

14

Holding Plaintiff to a less stringent standard, the Court **DENIES** Defendants' Motion to Strike. However, upon review of the Surreply, the Court does not find any new information to support Plaintiff's claims.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 4), **DENIES** Plaintiff's Motion to Amend (ECF No. 8) and **DENIES** Defendants' Motion to Strike. (ECF No. 14.)

**IT IS SO ORDERED.**

9-27-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**